JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Allen J. Folk and Loyce H. Folk

## DEFENDANTS

Greenpoint Mortgage Funding, Inc.; BAC Home Loans Servicing, LP; BAC Field Services Corporation; Milstead & Associates, LLC; and McCaffrey Properties, LLC

**(b)** County of Residence of First Listed Plaintiff   Lebanon
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Smith Law Group, LLC, James M. Smith, Esquire, 14133 Kutztown Road, PO Box 626, Fleetwood, PA  19522

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending |  |  | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 463 Habeas Corpus - Alien Detainee | |
| | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 465 Other Immigration Actions | |
| | ☐ 442 Employment | **Habeas Corpus:** | | |
| | ☐ 443 Housing/ Accommodations | ☐ 530 General | | |
| | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC 1692 et. seq./ 28 USC 1332

Brief description of cause:
Fair Debt Collection Practices Act of 1978/ Jurisdiction and Citizenship Diversity

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  9/28/10

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:  215 Sweetwater Lane, Newmanstown, PA 17073

Address of Defendant:  See attached page

Place of Accident, Incident or Transaction:  215 Sweetwater Lane, Newmanstown, PA 17073
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☐  No ☒

Does this case involve multidistrict litigation possibilities?   Yes ☐  No ☒

*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐  No ☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Fair Debt Collection and Practices Act of 1978 (15 USC 1692,et seq)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify) Trespass
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, James M. Smith, Esquire, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE:  9/28/10  _____  82124
Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  9/28/10  _____  82124
Attorney-at-Law   Attorney I.D.#

CIV. 609 (6/08)

<u>Addresses for the Defendants</u>

<u>Greenpoint Mortgage Funding, Inc.</u> – 2300 Brookstone Center Parkway, Columbus, Georgia 31904.

<u>BAC Home Loans Servicing, LP</u> – CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania  17107.

<u>BAC Field Services Corporation</u> – 301 East Vanderbilt Way, Suite 350, San Bernardino, California  92408.

<u>Milstead & Associates, LLC</u> – Woodland Falls Corporate Park, 220 Lake Drive East, Suite 301, Cherry Hill, New Jersey  08002.

<u>McCaffrey Properties, LLC</u> – 92 Brian Drive, Beaver, Pennsylvania  15009.

APPENDIX G

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Allen J. Folk and Loyce H. Folk       :
                                               :
                  V.                     :           Civil Action
Greenpoint Mortgage Funding, Inc.; BAC Home Loans  :       No: _____
Servicing, LP; BAC Field Services Corporation;      :
Milstead & Associates, LLC; and McCaffrey Properties, LLC

## DISCLOSURE STATEMENT FORM

Please check one box:

☒                The nongovernmental corporate party,   Plaintiffs             
, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

❏                The nongovernmental corporate party, _____
, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

_____

_____

_____

_____

____September 28, 2010____                  _____
Date                                     Signature

                Counsel for:        Plaintiffs               

## Federal Rule of Civil Procedure 7.1 Disclosure Statement
      (a)    Who Must File; Contents.  A nongovernmental corporate party must file two copies of a disclosure statement that:
           (1)    identifies any parent corporation and any publicly held corporation owning10% or more of its stock;  or

           (2)    states that there is no such corporation.

      (b) Time To File; Supplemental Filing.  A party must:
           (1)    file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and
           (2)    promptly file a supplemental statement if any required information changes.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Allen J. Folk and Loyce H. Folk     :     CIVIL ACTION

Greenpoint Mortgage Funding, Inc.; BAC   :
Home Loans Servicing, LP; BAC Field     :
Services Corporation; Milstead & Associates, :     NO.
LLC; and McCaffrey Properties, LLC

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.      (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      (X )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.      (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)      (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (  )

| September 28, 2010 | James M. Smith, Esquire | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 944- 8406 | (610) 944-8408 | jsmith@smithlawgrp.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| Allen J. Folk and Loyce H. Folk<br>*Plaintiff*<br>v.<br>Greenpoint Mortgage Funding, Inc.; BAC Home Loans<br>*Defendant*<br>Servicing, LP; BAC Field Services Corporation; Milstead<br>& Associates, LLC; and McCaffrey Properties, LLC | )<br>)<br>)   Civil Action No.<br>)<br>)<br>) |

### NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: All Defendants, above when we receive the filed Complaint back.
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within _____ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: September 28, 2010

_____
*Signature of the attorney or unrepresented party*

James M. Smith, Esquire
*Printed name*

14133 Kutztown Road,PO Box 626
Fleetwood, PA *Address* 19522

jsmith@smithlawgrp.com
*E-mail address*

(610) 944-8406
*Telephone number*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ALLEN J. FOLK and LOYCE H. FOLK, :
          Plaintiffs      :
                         :
           v.          :     NO.
                         :
GREENPOINT MORTGAGE     :
FUNDING, INC.; BAC HOME LOANS  :
SERVICING, LP; BAC FIELD     :
SERVICES CORPORATION;     :
MILSTEAD & ASSOCIATES, LLC; and:
McCAFFREY PROPERTIES, LLC,  :     JURY TRIAL DEMANDED
          Defendants    :

## COMPLAINT

Plaintiffs Allen J. Folk and Loyce H. Folk bring this action to vindicate their rights under the Fair Debt Collection and Practices Act, 15 U.S.C. § 1692 *et. seq.*, and other laws, and together say:

## PARTIES

1.     Plaintiffs are citizens of the United States and the Commonwealth of Pennsylvania. They reside in Newmanstown, Lebanon County, Pennsylvania.

2.     Defendant Greenpoint Mortgage Funding, Inc. (hereinafter, "Greenpoint") is believed and therefore averred to be a corporation organized and existing under the laws of the State of New York, registered to conduct business in the Commonwealth of Pennsylvania and having their corporate headquarters at 100 Wood Hollow Drive, Novato, California 94945, an office and place of business at 2300 Brookstone Center Parkway, Columbus, Georgia 31904.

3.     Defendant BAC Home Loans Servicing, LP, believed and therefore averred to be a limited partnership organized and existing under the laws of the State of Texas, has a general partner business address at 4500 Park Granada, Calabasas, California 91302, and an agent for service of process at CT Corporation System, 116 Pine Street, Suite 320,

1

Harrisburg, Pennsylvania 17107.

4.      Defendant BAC Field Services Corporation is believed and averred to be a corporation organized and existing under the laws of the State of California, has a place of business at 301 East Vanderbilt Way, Suite 350, San Bernardino, California 92408, and doing business in the Commonwealth of Pennsylvania.

5.      Defendant Milstead & Associates, LLC, (hereinafter, "Milstead") is believed and therefore averred to be a limited liability company organized and existing under the laws of the State of New Jersey, having a principal place of business at Woodland Falls Corporate Park, 220 Lake Drive East, Suite 301, Cherry Hill, New Jersey 08002, and doing business in the Commonwealth of Pennsylvania.  Milstead is believed and therefore averred to be a business engaged in the practice of law and licensed to do so in the Commonwealth of Pennsylvania.

6.      Defendant McCaffrey Properties, LLC, (hereinafter, "McCaffrey") is believed and therefore averred to be a corporation organized and existing under the laws of the State of New York, with an address of McCaffrey Properties, LLC, 5575 Meltzer Court, Suite 7, Cicero, New York 13039, doing business in the Commonwealth of Pennsylvania with an office and place of business at 92 Brian Drive, Beaver, Pennsylvania 15009.

## JURISDICTION

7.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1337. Some of Plaintiffs' claims arise under the Fair Debt Collection Practices Act of 1978, 15 U.S.C. § 1692, *et seq.* (hereinafter, the "Act").

8.      Plaintiffs also invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.  This action is between parties that are citizens of different states and the amount in controversy is greater than $75,000.  For diversity jurisdiction purposes, Plaintiffs are citizens of the Commonwealth of Pennsylvania and Defendants are not.

## VENUE

9.      Venue is proper within the Eastern District of Pennsylvania pursuant to 28

U.S.C. § 1391(a) because the breach occurred within the Eastern District of Pennsylvania and

pursuant to 28 U.S.C. § 1391(c) because the Defendants may reside and/or be found in the

Eastern District.

## STATEMENT OF CLAIM

10.     By Mortgage dated December 1, 2006, Greenpoint received a mortgage

intended to secure a note executed by one Raul C. Polanco against real estate known as 137

½ N. 8th Street, Reading, Berks County, Pennsylvania (hereinafter, the "Polanco Mortgage").

11.     The mortgage held by Greenpoint against the Polanco property secures a note

of indebtedness which constitutes a debt as that term is used in the Act, 15 U.S.C.A. §

1962a(5).

12.     The Polanco Mortgage was filed with the Berks County Recorder of Deeds on

March 12, 2007 and recorded as Instrument No. 2007014011.  A true and correct copy of the

Polanco Mortgage is attached hereto, marked as Exhibit A, and incorporated herein by

reference.

13.     It is believed and therefore averred that on October 1, 2008, Milstead, acting

in its representative capacity, drafted and filed on behalf of its client, Greenpoint, two

instruments captioned Assignment of Mortgage which purport to assign Greenpoint's interest

in the Polanco Mortgage to an entity called, "LaSalle Bank National Association, as Trustee

of Morgan Stanley Mortgage Loan Trust 2007-8XS, Mortgage Pass-Through Certificates"

(hereinafter, "Assignments of Mortgage").  A true and correct copy of the Assignment of

Mortgage instruments are together attached hereto, collectively marked as Exhibit B, and

incorporated herein by reference.

3

14.     On June 10, 2008, Milstead represented Greenpoint and initiated a foreclosure action on behalf of Greenpoint against the real estate which is the subject of the Polanco Mortgage and has a mailing address of 137 ½ North 8th Street, Reading, Pennsylvania 19601 (hereinafter, the "Polanco Property").

15.     The foreclosure action was prosecuted in the Berks County Court of Common Pleas, docketed at number 08-07370 and initiated by Complaint in Foreclosure filed on June 10, 2008 (hereinafter, the "Foreclosure Action"). A true and correct copy of the Complaint in Foreclosure is attached hereto, marked as Exhibit C, and incorporated herein by reference.

16.     The Foreclosure Action was prosecuted by Milstead on behalf of Greenpoint or its successors in interest.

17.     Plaintiffs have never owned any interest in the Polanco Property.

18.     Plaintiffs have never had any contractual relationship with any of the Defendants.

19.     The Polanco Mortgage misidentifies the Polanco Property as 137 North 8th Street, Reading, Pennsylvania 19601 (hereinafter, the "Folk Property").

20.     At all times relevant to this Complaint, the Folk Property was owned by Plaintiffs in fee simple as tenants by the entireties, and was not subject to any lien or encumberance to which Raul C. Polanco had any legal right.

21.     The mistake of misidentifying the Polanco Property in the Polanco Mortgage carried over and into the Assignments of Mortgage which also misidentify the Polanco Property as 137 North 8th Street, Reading, Pennsylvania 19601.

22.     The mistake of misidentifying the Polanco Property in the Polanco Mortgage continued to carry over into the Complaint in Foreclosure drafted by Milstead and filed under the Foreclosure Action.

23.     Raul C. Polanco has never owned any interest in the Folk Property.

24.     Greenpoint has never owned any interest in the Folk Property and has never held a legal right to encumber the Folk Property.

25.     Nonetheless, on September 24, 2008, Greenpoint with the assistance and aid of Milstead, obtained default judgment against Raul C. Polanco and began the process of execution against the Folk Property.

26.     On October 23, 2008, deputies with the Berks County Sheriff's Department posted the Folk Property with notice that the Folk Property was listed for Sheriff Sale to be held on December 5, 2008.

27.     On October 29, 2008, Plaintiff, Allen J. Folk, was notified by a neighbor of the posting and made Milstead aware of the error by telephone.

28.     On November 3, 2008, Plaintiff, Allen J. Folk, met with the Sheriff of Berks County, Eric J. Weaknecht, to have the Folk Property removed from the Sheriff Sale list.

29.     By letter dated November 5, 2008, Plaintiffs were notified by the Berks County Sheriff that the Folk Property had, indeed, been taken off the list of properties scheduled for Sheriff Sale on December 5, 2008.

30.     Plaintiffs received a letter from Milstead dated November 14, 2008, acknowledging the error and promising to "take all necessary action in order to have this matter corrected and we apologize for the inconvenience that this has caused you." A true and correct copy of said letter is attached hereto, marked as Exhibit D, and incorporated herein by reference.

31.     Nine months later, on August 18, 2009, Milstead filed a Motion to Amend Complaint to Correct Clerical Error Nunc Pro Tunc seeking to correct the address listed in the Complaint from 137 N. 8th Street (Folk Property) to 137 ½ N. 8th Street (Polanco Property).

32.     On August 20, 2009, the Berks County Court of Common Pleas issued an Order granting Milstead's motion and correcting the address listed in the Complaint. A true and correct copy of said Order is attached hereto, marked as Exhibit E, and incorporated herein by reference.

33.     Despite being notified of the error and despite its assurances that the matter would be resolved, Milstead failed to exercise reasonable care and to take the steps necessary to ensure that no further action would be taken against Plaintiffs in the collection of the debt of another.

34.     It is believed and therefore averred that, at all times relevant to Plaintiffs' Complaint, either Greenpoint or Milstead retained BAC Home Loan Servicing, LP, (hereinafter, "BAC Home Loans"), who, in turn, retained BAC Field Services Corporation (hereinafter, "BAC Field Services") to manage and secure distressed real estate, including the real estate subject to the Foreclosure Action.

35.     It is believed and therefore averred that BAC Field Services retained McCaffrey to secure the real estate subject to the Foreclosure Action.

36.     By work order dated October 19, 2009, BAC Field Services directed that McCaffrey secure real estate having an address of 137 N. 8th Street, Reading, Pennsylvania 19601 (Folk Property) (hereinafter, the "Work Order") on behalf of BAC Home Loans. A true and correct copy of the Work Order is attached hereto, marked as Exhibit F, and incorporated herein by reference.

37.     On or about November 5, 2009, Billy Sachs, an employee of McCaffrey, pursuant to the Work Order, violently and without invitation or permission of Plaintiff broke open the door to and unlawfully entered the Folk Property.

38.     McCaffrey's unwelcome, unannounced and violent entry into the Folk Property triggered an alarm monitored by ADT, which in turn, notified Plaintiffs.

6

39.     Upon Mr. Folk's arrival at the Folk Property on November 5, 2009, Billy Sachs produced the Work Order. Mr. Folk then called McCaffrey and spoke with John Balbino, who held himself out as Mr. Sach's supervisor and an agent of McCaffrey.

40.     During his conversation with Mr. Balbino, Mr. Folk advised Mr. Balbino of the error in the address and his belief that this had been taken care of by Milstead. Mr. Balbino apologized and assured Mr. Folk that the problem would be immediately corrected.

41.     The next day, November 6, 2009, Mr. Folk contacted Milstead by telephone and advised Greg Wilkins, believed and therefore averred to be an attorney associated with Milstead, of the break-in. Mr. Wilkins apologized and, again, assured Mr. Folk that the problem would be immediately resolved.

42.     Mr. Folk spent a significant amount of time and money on November 5, November 6, and November 7, 2009, repairing the damage caused by Defendants to the Folk Property.

43.     On or about November 10, 2009, Plaintiffs caused to be affixed to the front door of the Folk Property a sign intending to distinguish their property from the Polanco Property. A true and correct copy of the sign is attached hereto, marked as Exhibit G, and incorporated herein by reference.

44.     At approximately 11:00 a.m., on Veterans Day, November 11, 2009, one week after the first break-in, Steven Floyd, an employee of McCaffrey acting within the scope of that employment, violently and without invitation or permission of Plaintiffs, broke open the door to and unlawfully entered the Folk Property for the second time.

45.     As with the first break-in, McCaffrey's unwelcome, unannounced and violent entry into the Folk Property triggered an alarm monitored by ADT, which in turn, notified Plaintiffs.

7

46.     Immediately before breaking into the Folk Property on November 11, 2009, Steven Floyd read the sign posted on the door of the Folk Property, as evidenced by his handwritten note placed on the aforementioned sign. A true and correct copy of the note is attached hereto, marked as Exhibit H, and incorporated herein by reference.

47.     Before Mr. Folk could arrive at the Folk residence on November 11, 2009, Steven Floyd had made it to the second floor of the residence and committed damage to doors on the second floor.

48.     At the time of the first break-in, Milstead had been made expressly aware of the confusion created by the mistake that misidentified the real estate in the Polanco Mortgage and the Complaint in Foreclosure, and had in fact, already taken some, albeit inadequate, steps to correct the misidentification in the Complaint in Foreclosure.

49.     At the time of the second break-in, McCaffrey and Milstead were fully aware of the previous unlawful intrusion into the Folk Property.

50.     None of Defendants had permission, express or implied, to enter the Folk Property at any time.

COUNT I
NEGLIGENCE/NEGLIGENT TRESPASS
FOLK v. ALL DEFENDANTS

51.     Plaintiffs incorporate each and every averment set forth above as though the same were set forth at length herein.

52.     **Greenpoint** owed Plaintiffs a duty to exercise reasonable care in the:

a.   gathering and handling of information used in processing, securing and managing loans secured by real estate;

b.   drafting and maintenance of loan documents and records, including mortgages such as the Polanco Mortgage;

8

c. delivery of information to its agents including those such as Milstead, BAC Home Loans, and/or BAC Field Services, engaged to assist in the collection of debts such as that owed by Mr. Polanco; and

d. prosecution of the Foreclosure Action, so as to avoid:

(i) wrongfully encumbering Plaintiffs' title to the real estate to which it has no legal right;

(ii) interrupting Plaintiffs' quiet enjoyment of their property; and

(iii) otherwise causing Plaintiffs harm.

53.    It is believed and therefore averred that Greenpoint breached its duty in that information that it knew or should have known was inaccurate and erroneously gathered, handled, used in drafting or maintaining loan documents, and delivered to either Milstead or BAC Home Loans or both,  and that the same would be used to encumber Plaintiffs' title to the Folk Property, interrupt Plaintiffs' quiet enjoyment of the Folk Property, and otherwise cause Plaintiffs harm, all in furtherance of the prosecution of the Foreclosure Action.

54.    **Milstead** owed Plaintiffs a duty to exercise reasonable care in the:

a. gathering and handling of information regarding loans secured by real estate;

b. drafting and maintenance of loan documents and records related to loans secured by real estate, including but not limited to the Polanco Mortgage, Assignments of Mortgage, and the Complaint in Foreclosure and all pleadings in the Foreclosure Action;

c. delivery of information to its debt collectors; and

d. prosecution of the Foreclosure Action, so as to avoid:

(i) causing Plaintiffs' title to the Folk Property to be wrongfully encumbered by its client when neither it nor its client has legal right to do so;

(ii) interrupting Plaintiffs' quiet enjoyment of their property; and

(iii) otherwise causing Plaintiffs harm.

55.     It is believed and therefore averred that Milstead breached its duty when it:

a.   gathered, handled, used in drafting or maintaining loan documents, and delivered to BAC Home Loans, BAC Field Services, McCaffrey, or more than one of them, information that it knew or should have known was inaccurate and erroneous, and that the same would be used to facilitate the prosecution of the Foreclosure Action and wrongfully encumber the Folk Property, the same being totally unrelated to the Polanco Mortgage;

b.   drafted loan documents and pleadings related to loans secured by real estate, including the Polanco Mortgage, Assignments of Mortgage, the Complaint in Foreclosure and all pleadings in the Foreclosure Action, when it knew or should have known that the address it used was inaccurate and erroneous and that the same would be used to facilitate the prosecution of the Foreclosure Action and wrongfully encumber the Folk Property; and

c.   failed to take adequate steps to promptly correct the misidentification referenced above after the error was brought to its attention on more than one occasion.

56.     **BAC Home Loans** owed Plaintiffs a duty to exercise reasonable care in the gathering of, the maintenance of, and the delivery of information to its agents, including BAC Field Services.

57.     It is believed and therefore averred that BAC Home Loans breached its duty when it gathered, maintained and delivered to BAC Field Services information that it knew or

should have known was inaccurate and erroneous and that the same would be used to facilitate the prosecution of the Foreclosure Action, thereby facilitating the trespass of the Folk Property.

58. **BAC Field Services** owed Plaintiffs a duty to exercise reasonable care in the gathering of, the maintenance of, and the delivery of information to its agents, including McCaffrey.

59. It is believed and therefore averred that BAC Field Services breached its duty when it gathered, maintained and delivered to McCaffrey information that it knew or should have known was inaccurate and erroneous and that the same would be used to facilitate the prosecution of a foreclosure action, thereby facilitating the trespass of the Folk Property.

60. **McCaffrey** owed Plaintiffs a duty to exercise reasonable care in the gathering of, the maintenance of, and the delivery of information to its agents, knowing that the information would be relied on by its agents in the prosecution of a foreclosure action.

61. McCaffrey breached its duty when it:

a. gathered, maintained or delivered to McCaffrey information that it knew or should have known was inaccurate and erroneous and that the same would be used to facilitate the prosecution of a foreclosure action, thereby facilitating the trespass of the Folk Property;

b. violently and without invitation or permission of Plaintiff broke open the door to and unlawfully entered the Folk Property on November 5, 2009; and

c. violently and without invitation or permission of Plaintiff broke open the door to and unlawfully entered the Folk Property on November 11, 2009.

62. As a direct and proximate result of the aforementioned conduct of the Defendants, the Plaintiffs have suffered physical damages to their property, were required to

spend hours and money to repair the damage to their property, and have suffered significant inconvenience, discomfort and mental anguish.

63.    Defendants' conduct rendered Plaintiffs *de facto* garnishees in Greenpoint's Foreclosure Action.

64.    Plaintiffs have never had any indebtedness due to either Greenpoint or its mortgagor, Raul C. Polanco.

WHEREFORE, Plaintiffs pray this Court enter judgment in favor of Plaintiffs and against Defendants and enter an order that:

1.    directs that Defendant Greenpoint to immediately file a recording with the Berks County Recorder of Deeds noting the error complained of and confirming that no liens exists against 137 N. 8th Street, Reading, Pennsylvania 19601, and

2.    awards Plaintiffs compensatory damages, costs of suit, including attorneys' fees as authorized under 42 Pa.C.S.A. § 2503(3), and any other relief this Court deems just and proper under the circumstances.

COUNT II
INTENTIONAL TRESPASS
FOLK v. MILSTEAD and McCAFFREY

65.    Plaintiffs incorporate each and every averment set forth above as though the same were set forth at length herein.

66.    On October 29, 2008, Milstead was made aware of the error in the misidentification of the Polanco Property and knew or should have known of the risk of harm that its error posed to Plaintiffs and their quiet enjoyment of the Folk Property.

67.    Despite being aware of the error and appreciating the risk it posed to Plaintiffs, Milstead took no steps to correct the problem and to protect Plaintiffs from those risks until August 2009, and then failed to take steps that were adequate.

68.     Milstead's conduct began a chain of events that lead to and directly caused its agent, McCaffrey, to violently and without invitation or permission of Plaintiffs break open the door to and unlawfully enter the Folk Property.

69.     Despite having been specifically advised again on November 5, 2009, and while possessing a very real and fresh appreciation for the injury and harm its error had already caused, Milstead failed to take adequate steps to correct the problem and to protect Plaintiffs from risks posed to Plaintiffs and their quiet enjoyment of the Folk Property.

70.     Despite having been specifically advised on November 5, 2009, and while possessing a very real and fresh appreciation for the injury and harm its error had already caused, McCaffrey failed to take adequate steps to correct the problem and to protect Plaintiffs from risks posed to Plaintiffs and their quiet enjoyment of the Folk Property.

71.     The conduct of both Milstead and McCaffrey began a foreseeable chain of events that lead to and directly caused the second break-in on November 11, 2009.

72.     The conduct of both Milstead and McCaffrey was outrageous.

73.     In failing to take adequate measures to prevent the November 5th and the November 11th break-in, Milstead acted with a wanton and reckless disregard for and indifference to the rights of Plaintiffs.

74.     In failing to take adequate measures to prevent the November 11th break-in, McCaffrey acted with a wanton and reckless disregard for and indifference to the rights of Plaintiffs.

75.     As a direct and proximate result of the aforementioned conduct of the Defendants, the Plaintiffs have suffered physical damages to their property, were required to spend hours and money to repair the damage to their property, and have suffered significant inconvenience, discomfort and mental anguish.

WHEREFORE, Plaintiffs pray this Court enter judgment in favor of Plaintiffs and against Defendants Milstead and McCaffrey and enter an order that awards Plaintiffs compensatory damages, punitive damages, costs of suit, including attorneys' fees under 42 Pa.C.S.A. § 2503(3), attorneys' fees otherwise available, and any other relief this Court deems just and proper under the circumstances.

COUNT III
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
FOLK v. MILSTEAD

76.     Plaintiffs incorporate each and every averment set forth above as though the same were set forth at length herein.

77.     Acting in its representative capacity, Milstead was, at all times relevant to this Complaint, a debt collector as that term is used in the Act, 15 U.S.C.A. § 1962a(6) with reference to the mortgage held by Greenpoint against the Polanco Property.

78.     The above-described conduct of Milstead had the natural consequence of harassing, oppressing and abusing Plaintiffs in connection with the collection of the debt of Plaintiffs' neighbor in violation of 15 U.S.C. § 1692d.

79.     The above-described conduct of Milstead constitutes action that Milstead was not legally entitled to take and was therefore in violation of 15 U.S.C. § 1692e(5).

80.     By listing the Folk Property for Sheriffs Sale, Milstead threatened to sell Plaintiffs' property without legal right to do so in violation of 15 U.S.C. § 1692f(6).

81.     In taking the non-judicial action to effect the disposition or disablement of Plaintiffs' property, not once but twice, when it was aware that it had no legal right to possession of the property as collateral through an enforceable security interest, Milstead acted in violation of 15 U.S.C. § 1692f(6).

82.     The above-described conduct of Milstead constitutes unfair and unconscionable means of collecting the debt of Plaintiffs' neighbor.

14

83.   The conduct of Milstead was abusive and oppressive, and without any justification whatsoever.

84.   As a direct and proximate result of the conduct of Defendants, the Plaintiffs have suffered actual damages to their property, and significant inconvenience, discomfort and mental anguish to their persons.

WHEREFORE, Plaintiffs pray this Court enter judgment in favor of Plaintiffs and against Defendants Milstead and McCaffrey and enter an order that awards Plaintiffs compensatory damages, punitive damages, statutorily permissible damages including attorneys' fees, costs of suit, and any other relief this Court deems just and proper under the circumstances.

SMITH LAW GROUP, LLC

Dated:  September 28, 2010

By: _____
James M. Smith, Esquire
Penna. Attorney I.D. # 82124
14133 Kutztown Road
P.O. Box 626
Fleetwood, PA 19522
(610) 944-8406
Attorney for Plaintiffs

15

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit A

Prepared By   Greenpoint Mortgage Funding Inc.
3000 Atrium Way, Suite 430
Mr. Laurel, NJ  08054

File No·     OA-06-1529

Return To.   Opal Abstract, LLC
711 Spring St, Suite 200
Wyomissing, PA 19610
610-378-9928
137·½

Premises:    137 North Eighth Street
Reading, PA 19601
Municipality Reading City
Parcel ID:   08-5307-84-91-5168

REC BK05098-PG2265                    MORTGAGE
2007014011    03/12/2007 09 07 17 AM 2
RCD FEE $105 00                       PAGE  1 of 21



ELLIE ANTOINE ROD                     BERKS
COUNTY ROD

# 1ˢᵗ MORTGAGE

**Mortgagor:**     Raul C. Polanco

**Mortgagee:**     MERS, Inc., as nominee for
Greenpoint Mortgage Funding Inc.

Prepared By

**GreenPoint Mortgage Funding, Inc.**
**100 Wood Hollow Drive, Novato, CA**
**94945**

(800) 462-2700
Return To

**GreenPoint Mortgage Funding, Inc.**
**981 Airway Court, Suite E**
**Santa Rosa, CA 95403-2049**

Parcel Number
**08-5307-84-91-5168**
Premises
**137 N 8th Street, Reading, PA**
**19601**

---

[Space Above This Line For Recording Data]

# MORTGAGE

MIN 10001380091250480**6**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) **"Security Instrument"** means this document, which is dated **December 1, 2006** together with all Riders to this document

(B) **"Borrower"** is **Raul C Polanco, An Unmarried Man**

Borrower is the mortgagor under this Security Instrument

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint MI 48501-2026, tel  (888) 679-MERS

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                 0480

VMP -6A(PA) (0508) 01     Form 3039  1/01

Page 1 of 18

VMP Mortgage Solutions, Inc

R·P·

**(D) "Lender"** is **GreenPoint Mortgage Funding, Inc.**

Lender is a **Corporation**
organized and existing under the laws of **the State of New York**
Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

**(E) "Note"** means the promissory note signed by Borrower and dated **December 1, 2006**
The Note states that Borrower owes Lender **sixty-nine thousand two hundred and 00/100**

(U S $**69,200.00**                    ) plus interest  Borrower has promised to pay this debt in regular Periodic Dollars
Payments and to pay the debt in full not later than **December 1, 2021**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| ☐ Occupancy Rider | ☐ Interim Interest Rider | |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(L) "Escrow Items"** means those items that are described in Section 3

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

REC BK05088-PG2267
2007014011   03/12/2007 09 07 17 AM 2          MORTGAGE
BERKS COUNTY ROD                               PAGE 3 of 21

*R.P.*

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the  County          [Type of Recording Jurisdiction]
of **Berks**                                                                        [Name of Recording Jurisdiction]

**AS MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of **137 N 8th Street**

**Reading**                                                                                      [Street]
("Property Address")                              [City], Pennsylvania **19601**     [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

0480

|   REC BK05088-PG2288                        **MORTGAGE**
|   2007014011   03/12/2007 09:07 17 AM 2
|   **BERKS COUNTY ROD**                      PAGE 4 of 21

R.P.

ALL THAT CERTAIN lot or piece of ground together with three story brick apartment house thereon erected, known as "Gorman Apartments", and being No. 137- ½ North Eighth Street, lying on the Eastern side of North Eighth Street, between Walnut and Washington Streets, situate in the City of Reading, County of Berks and State of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point on the Eastern building line of North Eighth Street, 60' wide, said point being a distance of one hundred twenty-one and seventeen one hundredths feet (121.17') Southwardly along said building line of Eighth Street from the Southeastern building corner of Eighth and Walnut Streets; thence leaving said building line of Eighth Street and extending in an Easterly direction along property belonging to the now or late George J. Garman, being No. 139 North Eighth Street, by a line making an interior angle of eighty-nine degrees fifty-eight minutes (89° 58') with the line to be described last, passing partly through the middle of the party wall erected between No. 137- ½ and No. 139 North Eighth Street, a distance of one hundred fourteen and ninety-one one hundredths feet (114.91') to a point, thence extending in a Southerly direction along residue property belonging to John Gorman Adams, by line being one foot (1 00') Westwardly from and parallel to the Western face of the garages fronting on Cedar Street, belonging to the said John Gorman Adams, and making an interior angle of eighty-nine degrees fifty-five minutes (89° 55') with the last described line, a distance of fifteen and twenty-four one hundredths feet (15.24') to a point in line of property belonging to Robert G. Woolston; thence extending in a Westerly direction along said property belonging to Robert G Woolston, being No. 137 North Eighth Street and known as "Allen Apartments", by a line making interior angle of ninety degrees five minutes (90° 05') with the last described line, a distance of one hundred fourteen and eighty-seven one hundredths feet (114.87') to a point in the aforesaid Eastern building line of North Eighth Street; thence extending in a Northerly direction along said building line of Eighth Street, by a line making an interior angle of ninety degrees two minutes (90° 02') with the last described line, and passing along the Western face of the "Gorman Apartments" building, a distance of fifteen and twenty-four one hundredths feet (15 24') to the place of BEGINNING.

*R.P.*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S. currency However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment


REC BK05088-PG2270        MORTGAGE
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD          PAGE 6 of 21

*R.P.*

can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest

0480

-6A(PA) (0508) 01

Page 5 of 16

Form 3039  1/01

REC BK05088-PG2271
2007014011  03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 7 of 21

R.P.

shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification, and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower


REC BK05088-PG2272            MORTGAGE
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD            PAGE 8 of 21

*R.P.*

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

0480

 -8A(PA) (0508) 01

Page 7 of 18

Form 3039   1/01

R.P.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

0480

 -6A(PA) (0508) 01

Page 8 of 16

Form 3039   1/01

REC BK05088-PG2274
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 10 of 21

*R.P.*

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



0480

Form 3039   1/01

REC BK05088-PG2275
2007014011    03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 11 of 21

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be

-SA(PA) (0508) 01

Form 3039  1/01

REC BK05098-PG2278          MORTGAGE
2007014011  03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD            PAGE 12 of 21

*R.P.*

dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to


REC BK05088-PG2277
2007014011    03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 13 of 21

*R.P.*

have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument, (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or



-6A(PA) (0508) 01

Page 12 of 16

0480

Form 3039   1/01

REC BK06088-PG2278
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 14 of 21

*R+P*

agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances. gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup


REC BK05088-PG2279
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 15 of 21

R.P.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void  After such occurrence, Lender shall discharge and satisfy this Security Instrument  Borrower shall pay any recordation costs  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note

 -6A(PA) (0508) 01

Page 14 of 18

0480

Form 3039   1/01

R.P.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____

_____ (Seal)
                                    -Borrower
Raul C Polanco

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                        -Borrower

VMP®-6A(PA) (0505).01                    Page 15 of 16

                                                         0480
                                              Form 3039   1/01

REC BK05088-PG2281                       MORTGAGE
2007014011    03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD                         PAGE 17 of 21

R.P.

**COMMONWEALTH OF PENNSYLVANIA,** *Berks* County ss:

On this, the *1st* day of *December, 2006*, before me, the undersigned officer, personally appeared **Raul C Polanco**

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires

> **NOTARIAL SEAL**
> Carol A. Chelius, Notary Public
> Wyomissing Borough, Berks County
> My commission expires October 10, 2010

_____

*Settlement Officer*
Title of Officer

**Certificate of Residence**

I, *Carol A Chelius*, do hereby certify that the correct address of the within-named Mortgagee is P O Box 2026, Flint, MI 48501-2026

Witness my hand this **1st** day of **December, 2006**

_____
Agent of Mortgagee

VMP -6A(PA) (0508) 01          Page 18 of 18          0480
                                                    Form 3039  1/01

REC BK05088-PG2282                  MORTGAGE
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD                    PAGE 18 of 21

*R.P.*

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 1st       day of December, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to GreenPoint Mortgage Funding, Inc.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 137 N 8th Street, Reading, PA  19601

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument  building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument  All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property "

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change  Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5

0480

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

Wolters Kluwer Financial Services
VMP ®-57R (0411) 01
Page 1 of 3

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of default to Borrower  (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received, and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

0480

REC BK05088-PG2284
2007014011    03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD

MORTGAGE

PAGE 20 of 21

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider

_____ (Seal)          _____ (Seal)
Raul C Polanco                      -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                            -Borrower

                                                                                         0480
VMP®-57R (0411) 01                    Page 3 of 3                        Form 3170 1/01

REC BK05088-PG2285                      MORTGAGE
2007014011    03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD                        PAGE 21 of 21

**2007014011**

Ellie Antoine
Recorder of Deeds

County of Berks
County Service Center
Reading, PA 19601
610-478-3380
Customer Receipt

Receipt Number: 173163
Operator ID: CJABLONSKI
Station ID: CASHIER3
Submitter Name:
OPAL ABSTRACT

MORTGAGE

RECORD BK05088-PG2265          2007014011
Pages: 21
Recorded: 03/12/2007 09:07:17 AM:2

| | |
|---|---|
| Recording Fee | $13.00 |
| Recording Page Fee | $1.00 |
| No of Pages      21 | $32.00 |
| No of Names       2 | $0.00 |
| Affordable Housing | $43.50 |
| ROD Improvement Fund | $5.00 |
| Writ Tax | $0.50 |
| Judicial | $10.00 |
| | ------------ |
| Total: | $105.00 |

Check #17841
Check #09804

RECORDED IN BERKS CO. PA

RECORDER OF DEEDS

REC BK05088-PG2265          MORTGAGE
2007014011   03/12/2007 09 07 17 AM 2
BERKS COUNTY ROD          PAGE 21 of 21

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit B

4

When recorded please return to:
Milstead & Associates, LLC
220 Lake Drive East, Ste 301
Cherry Hill, New Jersey 08002

Loan # 91250480

REC BK05443-PG2147                    ASSIGNMENT OF MTG
2008056596    11/20/2008 02 41 16 PM 1
RCD FEE $33 00
                                                          PAGE  1 of 5



BERK3
COUNTY ROD

FREDERICK C SHEELER ROD

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that **Mortgage Electronic Registration Systems, Incorporated (MERS)** existing under the laws of the State of Pennsylvania, (Assignor), in consideration of the sum of $1.00 (One) Dollar(s) lawful money of the United States, to Assignor in hand paid by **GreenPoint Mortgage Funding, Incorporated (Assignee)** at or before the ensealing and delivery of these presents, the receipt whereby is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the said Assignee a certain Indenture of Mortgage bearing the date of December 1, 2006 in the amount of $69,200.00 made by Raul C. Polanco, given to Mortgage Electronic Registration Systems, Incorporated as nominee for GreenPoint Mortgage Funding, Incorporated. Said mortgage was recorded on March 12, 2007 in Mortgage Book Volume 05088 Page 2265 in the public records of Berks County, Pennsylvania, upon the following described piece of parcel of land, to wit.

Property more commonly known as

**137 North 8th Street, Reading, PA  19601**
**Parcel # 5307-84-91-5168**

Together with the Note of obligation described in said Mortgage, and the money due and to become due thereon, with interest

TO HAVE AND TO HOLD the same unto the said Assignee and assigns forever

IN WITNESS WHEREOF, the said Assignor has caused these presents to be signed in its name the ___1st___ day of ___October___ 2008

Attest: _____

Secretary
**Pat Lee**
**Assistant Secretary**

Agent of Mortgage Electronic
Registration Systems, Inc. (MERS)

**Joe Johnson**
**Vice President**

{00000185}

CORPORATE ACKNOWLEDGEMENT

STATE OF NEW JERSEY

COUNTY OF CAMDEN

' s s

On this, the __01__ day of __October__, 2008, before me, the undersigned officers,

personally appeared ___Joe Johnson *___ and ___Pat Lee___ who
                         (agent of MERS)              (secretary)

acknowledged himself/herself being authorized to do so, executed the foregoing instrument for

the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

Corporate Seal

By. _____

Pat Lee
Assistant Secretary

Charmaine Carter
NOTARY PUBLIC

* Joe Johnson is agent of Mortgage Electronic Registration Systems Inc.

{00000185}

I hereby certify that the precise address of the Assignor, Mortgage Electronic

Registration Systems, Incorporated (MERS) is PO Box 2026, Flint, MI 48501

I hereby certify that the precise address of the Assignee, GreenPoint Mortgage Funding,

Incorporated is 100 Wood Hollow Drive, Novato, CA 94945.

Name:
Title:

Pat Lee
Assistant Secretary

{00000185}

Inst# 2007014011 RECORD BK/PG- 05098/2269 Date Recorded: 3/12/2007 9:07:17 AM

ALL THAT CERTAIN lot or piece of ground together with three story brick apartment house thereon erected, known as "Gorman Apartments", and being No 137- ½ North Eighth Street, lying on the Eastern side of North Eighth Street, between Walnut and Washington Streets, situate in the City of Reading, County of Berks and State of Pennsylvania, being more fully bounded and described as follows, to wit.

BEGINNING at a point on the Eastern building line of North Eighth Street, 60' wide, said point being a distance of one hundred twenty-one and seventeen one hundredths feet (121.17') Southwardly along said building line of Eighth Street from the Southeastern building corner of Eighth and Walnut Streets, thence leaving said building line of Eighth Street and extending in an Easterly direction along property belonging to the now or late George J Garman, being No. 139 North Eighth Street, by a line making an interior angle of eighty-nine degrees fifty-eight minutes (89° 58') with the line to be described last, passing partly through the middle of the party wall erected between No 137- ½ and No 139 North Eighth Street, a distance of one hundred fourteen and ninety-one one hundredths feet (114.91') to a point, thence extending in a Southerly direction along residue property belonging to John Gorman Adams, by line being one foot (1 00') Westwardly from and parallel to the Western face of the garages fronting on Cedar Street, belonging to the said John Gorman Adams, and making an interior angle of eighty-nine degrees fifty-five minutes (89° 55') with the last described line, a distance of fifteen and twenty-four one hundredths feet (15.24') to a point in line of property belonging to Robert G. Woolston, thence extending in a Westerly direction along said property belonging to Robert G Woolston, being No. 137 North Eighth Street and known as "Allen Apartments", by a line making interior angle of ninety degrees five minutes (90° 05') with the last described line, a distance of one hundred fourteen and eighty-seven one hundredths feet (114 87') to a point in the aforesaid Eastern building line of North Eighth Street, thence extending in a Northerly direction along said building line of Eighth Street, by a line making an interior angle of ninety degrees two minutes (90° 02') with the last described line, and passing along the Western face of the "Gorman Apartments" building, a distance of fifteen and twenty-four one hundredths feet (15 24') to the place of BEGINNING.

# 2008056596

Frederick C Sheeler
Recorder of Deeds

County of Berks
County Service Center
Reading, PA 19601
610-478-3380
Customer Receipt

Receipt Number: 289046
Operator ID: MGENSEMER
Station ID: CASHIER5
Submitter Name:
MILSTEAD & ASSOC LLC

ASSIGNMENT OF MTG

RECORD BK05443-PG2147              2008056596
Pages: 5
Recorded: 11/20/2008 02:41:16 PM:1

| | |
|---|---|
| Recording Fee | $16.50 |
| Recording Page Fee | $1.00 |
| No of Pages      5 | $0.00 |
| ROD Improvement Fund | $5.00 |
| Writ Tax | $0.50 |
| Judicial | $10.00 |
| Total: | $33.00 |

Check #51590
Check #51591

RECORDED IN BERKS CO PA

*Frederick C Sheeler*

RECORDER OF DEEDS

REC BK05443-PG2151
2008056596    11/20/2008 02 41 16 PM 1
BERKS COUNTY ROD

ASSIGNMENT OF MTG

PAGE 5 of 5

4

When recorded please return to:
Milstead & Associates, LLC
220 Lake Drive East, Ste 301
Cherry Hill, New Jersey 08002

REC BK05443 PG2152          ASSIGNMENT OF MTG
2008056597      11/20/2008 02 41 16 PM 2
RCD FEE $33 00
                                      PAGE 1 of 5



BERKS
COUNTY ROD
FREDERICK C SHEELER ROD

Loan # 91250480

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that Greenpoint Mortgage Funding, Incorporated existing under the laws of the State of Pennsylvania, (Assignor), in consideration of the sum of $1 00 (One) Dollar(s) lawful money of the United States, to Assignor in hand paid by LaSalle Bank National Association, as Trustee of Morgan Stanley Mortgage Loan Trust 2007-8XS, Mortgage Pass-Through Certificates (Assignee) at or before the ensealing and delivery of these presents, the receipt whereby is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the said Assignee a certain Indenture of Mortgage bearing the date of December 1, 2006 in the amount of $69,200 00 made by Raul C Polanco, given to Mortgage Electronic Registration Systems, Incorporated as nominee for GreenPoint Mortgage Funding, Incorporated. Said mortgage was recorded on March 12, 2007 in Mortgage Book Volume 05088 Page 2265 in the public records of Berks County, Pennsylvania, upon the following described piece of parcel of land, to wit

Property more commonly known as

137 North 8th Street, Reading, PA  19601  (5301-84-91-5168)

Together with the Note of obligation described in said Mortgage, and the money due and to become due thereon, with interest

TO HAVE AND TO HOLD the same unto the said Assignee and assigns forever

IN WITNESS WHEREOF, the said Assignor has caused these presents to be signed in its name by its President and attested by its Secretary the  01  day of  Oct  , 2008

Attest

Secretary

Pat Lee
Assistant Secretary

Vice President, Greenpoint Mortage
Funding LLC

Joe Johnson
Vice President

{00000185}

CORPORATE ACKNOWLEDGEMENT

STATE OF GA

COUNTY OF MUSCogee        : S S

On this, the 01 day of October , 2008, before me, the undersigned officers,

personally appeared     Joe Johnson     and     Pat Lee     who
                        (vice president)          (secretary)

acknowledged himself/herself to be the Vice President and Secretary, respectively of

Greenpoint Mortgage Funding , Incorporated
                (corporation name)

and that he/she as such, being authorized to do so, executed the foregoing instrument for the

purposes therein contained

In witness whereof, I hereunto set my hand and official seal

Corporate Seal

By     Pat Lee
       Secretary
       **Pat Lee**
       **Assistant Secretary**

       Charmaine Carter
       NOTARY PUBLIC

{00000185}

Inst#: 2007014011 RECORD BK/PG: 05088/2269 Date Recorded: 3/12/2007 9:07:17 AM

ALL THAT CERTAIN lot or piece of ground together with three story brick apartment house thereon erected, known as "Gorman Apartments", and being No. 137- ½ North Eighth Street, lying on the Eastern side of North Eighth Street, between Walnut and Washington Streets, situate in the City of Reading, County of Berks and State of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point on the Eastern building line of North Eighth Street, 60' wide, said point being a distance of one hundred twenty-one and seventeen one hundredths feet (121.17') Southwardly along said building line of Eighth Street from the Southeastern building corner of Eighth and Walnut Streets; thence leaving said building line of Eighth Street and extending in an Easterly direction along property belonging to the now or late George J Garman, being No. 139 North Eighth Street, by a line making an interior angle of eighty-nine degrees fifty-eight minutes (89° 58') with the line to be described last, passing partly through the middle of the party wall erected between No. 137- ½ and No. 139 North Eighth Street, a distance of one hundred fourteen and ninety-one one hundredths feet (114.91') to a point, thence extending in a Southerly direction along residue property belonging to John Gorman Adams, by line being one foot (1.00') Westwardly from and parallel to the Western face of the garages fronting on Cedar Street, belonging to the said John Gorman Adams, and making an interior angle of eighty-nine degrees fifty-five minutes (89° 55') with the last described line, a distance of fifteen and twenty-four one hundredths feet (15.24') to a point in line of property belonging to Robert G. Woolston, thence extending in a Westerly direction along said property belonging to Robert G Woolston, being No. 137 North Eighth Street and known as "Allen Apartments", by a line making interior angle of ninety degrees five minutes (90° 05') with the last described line, a distance of one hundred fourteen and eighty-seven one hundredths feet (114.87') to a point in the aforesaid Eastern building line of North Eighth Street; thence extending in a Northerly direction along said building line of Eighth Street, by a line making an interior angle of ninety degrees two minutes (90° 02') with the last described line, and passing along the Western face of the "Gorman Apartments" building, a distance of fifteen and twenty-four one hundredths feet (15.24') to the place of BEGINNING.



I hereby certify that the precise address of the Assignor, Greenpoint Mortgage Funding, Incorporated is 2300 Brookstone Center Parkway, Columbus, GA 31904.

I hereby certify that the precise address of the Assignee, LaSalle Bank National Association, as Trustee of Morgan Stanley Mortgage Loan Trust 2007-8XS, Mortgage Pass-Through Certificates is c/o Greenpoint Mortgage, 2300 Brookstone Center Parkway, Columbus, GA 31904

Name
Title·                Pat Lee
                     Assistant Secretary

{00000185}

# 2008056597

Frederick C Sheeler
Recorder of Deeds

County of Berks
County Service Center
Reading, PA 19601
610-478-3380
Customer Receipt

Receipt Number: 289046
Operator ID: MGENSEMER
Station ID: CASHIER5
Submitter Name:
MILSTEAD & ASSOC LLC

ASSIGNMENT OF MTG

RECORD BK05443-PG2152          2008056597
Pages: 5
Recorded: 11/20/2008 02:41:16 PM:2

| | |
|---|---|
| Recording Fee | $16.50 |
| Recording Page Fee | $1.00 |
| No of Pages    5 | $0.00 |
| ROD Improvement Fund | $5.00 |
| Writ Tax | $0.50 |
| Judicial | $10.00 |
| Total: | $33.00 |

Check #51590
Check #51591

RECORDED IN BERKS CO. PA

*Frederick C Sheeler*

RECORDER OF DEEDS

REC BK05443-PG2156          ASSIGNMENT OF MTG
2008056597   11/20/2008 02 41 16 PM 2
BERKS COUNTY ROD          PAGE 5 of 5

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit C

MILSTEAD & ASSOCIATES, LLC
BY: Mary L. Harbert-Bell, Esquire
ID No. 80763
220 Lake Drive East, Suite 301
Cherry Hill, NJ 08002
(856) 482-1400

Attorney for Plaintiff
File: 32.08380

---

| | |
|---|---|
| **GreenPoint Mortgage Funding, Incorporated** 2300 Brookstone Center Pkwy Columbus, GA 31904,<br><br>          **Plaintiff,**<br><br>     **Vs.**<br><br>Raul C. Polanco 651 NE 140th Street North Miami, FL 33161,<br>          **Defendant.** | **COURT OF COMMON PLEAS BERKS COUNTY**<br><br>No.: OB-7370<br><br>**CIVIL ACTION<br>MORTGAGE FORECLOSURE**<br><br>ASSIGNED TO TIMOTHY J. ROWLEY, J. |

6/12/2008

RECEIVED
PROTHONOTARY'S OFFICE
2008 JUN 10 P 12: 27
BERKS COUNTY, PA.
MARIANNE R. SUTTON
PROTHONOTARY

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyers Referral and Information Service
Berks County Bar Association
544 Court Street
P.O. Box 1058
Reading, PA 19603
610-375-4591

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1.      This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose.

2.      Unless you dispute the validity of this debt, or any portion thereof, within 30 days after receipt of this notice, the debt will be assumed to be valid by our offices.

3.      If you notify our offices in writing within 30 days of receipt of this notice that the debt, or any portion thereof, is disputed, our offices will provide you with verification of the debt or copy of the Judgment against you, and a copy of such verification or judgment will be mailed to you by our offices.

MILSTEAD & ASSOCIATES, LLC
BY:Mary L. Harbert-Bell, Esquire
ID No. 80763
220 Lake Drive East, Suite 301
Cherry Hill, NJ 08002
(856) 482-1400

Attorney for Plaintiff

| | |
|---|---|
| GreenPoint Mortgage Funding, Incorporated<br>2300 Brookstone Center Pkwy<br>Columbus, GA 31904,<br><br>Plaintiff,<br><br>Vs.<br><br>Raul C. Polanco<br>651 NE 140th Street<br>North Miami, FL 33161,<br>Defendant. | COURT OF COMMON PLEAS<br>BERKS COUNTY<br><br><br>No.:<br><br>CIVIL ACTION<br>MORTGAGE FORECLOSURE |

## COMPLAINT IN MORTGAGE FORECLOSURE

1. Plaintiff, GreenPoint Mortgage Funding, Incorporated (the "Plaintiff"), is a corporation registered to conduct business in the Commonwealth of Pennsylvania and having an office and place of business at 2300 Brookstone Center Pkwy, Columbus, GA 31904.

2. Defendant, Raul C. Polanco, (the "Defendant"), is an adult individual and is the real owner of the premises hereinafter described.

3. Raul C. Polanco, Defendant, resides at 651 NE 140th Street, North Miami, FL 33161.

4. On December 1, 2006, in consideration of a loan in the principal amount of $69,200.00, the Defendant executed and delivered to GreenPoint Mortgage Funding, Incorporated a note (the "Note") with interest thereon at 7.375 percent per annum, payable as to the principal and interest in equal monthly installments of $636.59 commencing January 1, 2007.

5. To secure the obligations under the Note, the Defendant executed and delivered to Mortgage Electronic Registration Systems, Incorporated as nominee for GreenPoint Mortgage

Funding, Incorporated a mortgage (the "Mortgage") dated December 1, 2006, recorded on March 12, 2007 in the Department of Records in and for the County of Berks under Mortgage Book 5088, Page 2265. Pursuant to Pa.R.C.P. 1019 (g) the mortgage is incorporated herein by reference.  Plaintiff is proper party plaintiff by way of an assignment to be recorded.

6.  The Mortgage secures the following real property (the "Mortgaged Premises"):  137 North 8th Street, Reading, PA 19601.  A legal description of the Mortgaged Premises is attached hereto as Exhibit "A" and made a part hereof.

7.  The Defendant is in default of his/her obligations pursuant to the Note and Mortgage because payments of principal and interest due January 1, 2008, and monthly thereafter are due and have not been paid, whereby the whole balance of principal and all interest due thereon have become due and payable forthwith together with late charges, escrow deficit (if any) and costs of collection including title search fees and reasonable attorney's fees.

8. The following amounts are due on the Mortgage and Note:

```
Balance of Principal ...............................$66,498.06
Accrued but Unpaid Interest from
12/1/07 to 6/9/08
@ 7.375% per annum
($13.44 per diem) ...............................$2,580.48
Accrued Late Charges/NSF Charges...............$84.98
Corporate Advance.................................$62.00
Escrow Advance ...................................$329.23
Title Search Fees .................................$350.00
Reasonable Attorney's Fees .......................$1,250.00
TOTAL as of 06/09/2008 .....................$71,154.75
```

Plus, the following amounts accrued after June 9, 2008:

Interest at the Rate of 7.375 per cent per annum ($13.44 per diem);

Late Charges of $31.83 per month.

9. Plaintiff has complied fully with Act No. 91 (35 P.S.'1680.401(c) of the 1983 Session of the General Assembly ("Act 91") of the Commonwealth of Pennsylvania, by mailing to the Defendant at 137 North 8th Street, Reading, PA 19601 as well as to address of residences as listed in paragraph 3 of this document on March 7, 2008, the notice pursuant to § 403-C of Act 91, and the applicable time periods therein have expired.

WHEREFORE, Plaintiff demands an in rem judgment against the Defendant for foreclosure and sale of the Mortgaged Premises in the amount due as set forth in paragraph 8, namely, $71,154.75, plus the following amounts accruing after June 9, 2008, to the date of judgment: (a) interest of $13.44 per day, (b) late charges of $31.83 per month, (c) plus interest at the legal rate allowed on judgments after the date of judgment, (d) additional attorney's fees (if any) hereafter incurred, (e) and costs of suit.

MILSTEAD & ASSOCIATES, LLC

Mary L. Harbert-Bell, Esquire
Attorney for Plaintiff

# VERIFICATION

I, Mary L. Harbert-Bell, hereby certify that I am an Attorney for Plaintiff and am authorized to make this verification on Plaintiff's behalf. I verify that the facts and statements set forth in the forgoing Complaint in Mortgage Foreclosure are true and correct to the best of my knowledge, information and belief. This verification is made subject to the penalties of 18 Pa. C.S. ' 4904, relating to unsworn falsification to authorities.

Name: Mary L. Harbert-Bell, Esquire
Title: Attorney



Inst#: 2007014011 RECORD BK/PG: 05099/2169 Date Recorded: 3/12/2007 9:07:17 AM

# EXHIBIT A

ALL THAT CERTAIN lot or piece of ground together with three story brick apartment house thereon erected, known as "Gorman Apartments", and being No. 137- ½ North Eighth Street, lying on the Eastern side of North Eighth Street, between Walnut and Washington Streets, situate in the City of Reading, County of Berks and State of Pennsylvania, being more fully bounded and described as follows, to wit:

BEGINNING at a point on the Eastern building line of North Eighth Street, 60' wide, said point being a distance of one hundred twenty-one and seventeen one hundredths feet (121.17') Southwardly along said building line of Eighth Street from the Southeastern building corner of Eighth and Walnut Streets; thence leaving said building line of Eighth Street and extending in an Easterly direction along property belonging to the now or late George J. Gorman, being No. 139 North Eighth Street, by a line making an interior angle of eighty-nine degrees fifty-eight minutes (89° 58') with the line to be described last, passing partly through the middle of the party wall erected between No. 137- ½ and No. 139 North Eighth Street, a distance of one hundred fourteen and ninety-one one hundredths feet (114.91') to a point, thence extending in a Southerly direction along residue property belonging to John Gorman Adams, by line being one foot (1.00') Westwardly from and parallel to the Western face of the garages fronting on Cedar Street, belonging to the said John Gorman Adams, and making an interior angle of eighty-nine degrees fifty-five minutes (89° 55') with the last described line, a distance of fifteen and twenty-four one hundredths feet (15.24') to a point in line of property belonging to Robert G. Woolston; thence extending in a Westerly direction along said property belonging to Robert G Woolston, being No. 137 North Eighth Street and known as "Allen Apartments", by a line making interior angle of ninety degrees five minutes (90° 05') with the last described line, a distance of one hundred fourteen and eighty-seven one hundredths feet (114.87') to a point in the aforesaid Eastern building line of North Eighth Street; thence extending in a Northerly direction along said building line of Eighth Street, by a line making an interior angle of ninety degrees two minutes (90° 02') with the last described line, and passing along the Western face of the "Gorman Apartments" building, a distance of fifteen and twenty-four one hundredths feet (15.24') to the place of BEGINNING.

REG PROPERTY/PENNS
2007014011   03/12/2007 09:07:17 AM 2
BERKS COUNTY REG

BOOK/PAGE
PAGE 5 of 51

R.S.

# Berks County
## Marianne Sutton, Prothonotary

Received: 6/10/2008 12:51:37 PM ptyhema

Docket Number: 08 07370 ActionID: 08

Complaint: Mortgage
Foreclosure                      $127.95

|                |          |
|----------------|----------|
| Prothy Fee     | $112.45  |
| State Tax      | $0.50    |
| PAF            | $5.00    |
| JCP            | $10.00   |

| **Total:**          | **$127.95** |
|---------------------|-------------|
| Check               | $127.95     |
| **Total Payments:** | **$127.95** |
| **Change Due:**     | **$0.00**   |

| PROTHONOTARY | BY | TO | DATE |
|---|---|---|---|
| Order sent to Judge | | | |
| Copies Sent | | | |
| Forwarded for Processing | | | |
| Forwarded for Processing | | | |
| Entered in Hearing Book | | | |
| Forwarded to Comp. Room | | | |
| Forwarded to File Room | | | |
| Located | | | |
| Request Completed | | | |
| Request for Env. | Add.Cert | Copies | |
| Request Rec'd. | | | |

EXHIBIT A

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit D

# MILSTEAD & ASSOCIATES, LLC
## Attorneys at Law
Woodland Falls Corporate Park
220 Lake Drive East, Ste 301
Cherry Hill, New Jersey 08002
TEL (856) 482-1400 FAX (856) 482-9190

Michael J. Milstead, Esq
michael@milsteadlaw.com

Nelson Diaz, Esq  PA & NJ
ndiaz@milsteadlaw.com

Mary Harbert, Esq.  PA & NJ
mharbert@milsteadlaw.com

Renee Royer, Esq.  PA & NJ
rroyer@milsteadlaw.com

Lisa Ann Thomas, Foreclosure Administrator
lthomas@milsteadlaw.com

Philadelphia Address:
235 South 15th Street
Philadelphia, PA 19107

Please Reply To: NJ Office
Our File No.32.08380

November 14, 2008

Allen J. Folk
215 Sweetwater Lane
Newmanstown, PA  17073

Re:     137 ½ North 8th Street, Reading, PA  19601

Dear Mr. Folk:

Our office, Milstead and Associates, has been asked to handle a mortgage foreclosure
action against the property owned by Raul C. Polanco at 137 ½ North 8th Street, Reading,
PA  19601 on behalf of Greenpoint Mortgage Funding.

Unfortunately we have discovered that there were some discrepancies on the loan
documents regarding the address of the property.  With your help and a full review of our
file we know see that the address of the property owned by Mr. Polanco, which should be
the subject of our foreclosure action, is **137 ½ North 8th Street, Reading, PA  19601.** As
you know our legal proceedings previously listed the property subject to foreclosure as 137
North 8th Street, Reading, PA  19601.  This is an error.  Obviously, we should not and can
not foreclose on a property that is not the subject of the mortgage executed by Mr. Polanco.

The Sheriff's sale that was scheduled in Berks County has been cancelled.  We are
currently evaluating our options in order to rectify error in our legal proceeding and move
forward with the foreclosure of the correct piece of property.

As discussed in our telephone conversations, our office will take all necessary action in
order to have this matter corrected and we apologize for the inconvenience that this has
caused you.

{00299313}

Page 2
November 14, 2008

Please contact our office with any further questions.

Very truly yours

Gregory Wilkins
Milstead and Associates, LLC

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit E

MILSTEAD & ASSOCIATES, LLC
BY: Mary L. Harbert-Bell, Esquire
Attorney ID# 808763
Woodland Falls Corporate Park
220 Lake Drive East, Suite 301
Cherry Hill, NJ 08002
(856) 482-1400
ATTORNEY FOR PLAINTIFF                    Our file No. 32.08380

| | | |
|---|---|---|
| GreenPoint Mortgage Funding, Incorporated | : | **COURT OF THE COMMON PLEAS** |
| | : | **BERKS COUNTY** |
| **Plaintiff,** | : | |
| | : | **No.: 08-7370** |
| vs. | : | |
| | : | |
| Raul C. Polanco | : | |
| | : | |
| **Defendant.** | : | |

*(stamp: BERKS COUNTY, PA / MARIANNE R. SUTTON / PROTHONOTARY / 2009 AUG 20 P 12: 08 / RECEIVED / PROTHONOTARY'S OFFICE)*

## ORDER

AND NOW, this 20 day of _August_ , 2009, upon consideration of

Plaintiff's Emergency Motion to Amend Complaint, *Nunc Pro Tunc*, it is hereby:

ORDERED and DECREED that Plaintiff's Motion to Amend Complaint, *Nunc Pro Tunc*

is hereby GRANTED.

IT IS FURTHER ORDERED that the Complaint shall be amended to change the adress at

paragraph six (6) to read as follows:

**The Mortgage secures the following real property (the "Mortgaged Premises"):**

**137 1/2 North 8th Street, Reading, PA 19601.  A legal description of the Mortgaged**

**Premises is attached hereto as Exhibit "A" and made a part hereof.**

/S/ Timothy J. Rowley, J.
                                                                      J.

NOTICE IS HEREBY GIVEN OF THE ENTRY OF THIS
ORDER OR DECREE PURSUANT TO RULE P.C.P. 236
YOU ARE NOTIFIED THAT THIS ORDER/DOCUMENT
HAS BEEN FILED IN THE PROTHONOTARY'S OFFICE
OF BERKS COUNTY AND THIS IS AN EXTRACT FROM
THE RECORD OF SAID COURT CERTIFIED THIS
____ DAY OF _August_ 20_09_
Marianne R. Sutton, Prothonotary
_____ Deputy

{00368448}

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit F

BAC Field Services Corporation                **Preservation**                PH :1-888-554-4690
                                               Work Order                     FAX :1-888-289-2979

Client : **BAC Home Loans Servicing, LP**                   Order Number : **27683851 - 1**
**RAUL C POLANCO**                                          Property ID : **P01999607**
**137 N 8TH ST**                                            Map Code :
**READING PA 19601**                                        Ordered :**10/19/2009**
                                                            Due Date :   **10/26/2009**
Property Type: **3 Units**   Loan Type: **Conventional**

Contractor Name: **McCaffrey Properties (PA-PPO)**         Sale Date: ____/___/_____
                                                            Contractor Fax:   (315) 699-8496

## WORK INSTRUCTIONS
Please submit completions timely.
**** Do not do any work other than what is specified on the work order. ****
** Immediately advise of any visual damage from fire, flood, etc. **

Comments to Contractor:

<u>Initial Secure</u>

Board /Screen

Board and/or reglaze per insurer guidelines. If necessary proceed with emergency boarding to prevent unauthorized entry and protect against weather damage up to $100.00.  Provide estimate for over allowable

Debris

DO NOT remove any debris even within the allowable. Provide Estimate to remove all debris. Take photos and complete inventory of all personal property.

Initial Yard Maintenance

Do initial grass cut & shrub trimming or bushogging per insurer guidelines, or bid if over the allowable.

Lock

Change only front door lock to FHA key code for that area, leaving all other doors secured with existing hardware if possible.  If Mobile/Manufactured home obtain VIN number or serial number, manufacture's name, model, year of manufacture and length and width of unit(s).

Mold    4 Sale   GKS   610  944  6623

Provide an estimate for the treatment, removal, or abatement of mold. The estimate must include: The cause, area, square footage and dollar amount.

Photos

Take before and after photographs to support all work done.

Pool / Spa; Secure / Cover / Drain

Secure all gates. Provide estimate to cover in ground pool only or provide estimate to remove above ground only. In areas with high water table drain and shock to avoid damage.

Report: 77421  Number
Rdg. Police Dept.

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit G

# <u>NOTICE</u>

So there is no confusion, this property is
**137 N. 8th St** - Owner - Allen J. Folk.
Any foreclosures, sheriff sales, or any
other legal matters pertain to next door,

which is **137 $\frac{1}{2}$** -owned by Raul C.
Polanco.

# <u>WARNING</u>

Any persons entering this premises will
be prosecuted by law for trespassing and
illegal entry.
Questions- contact owner Allen J. Folk
@
610-589-1362
Or
610-451-9495

Folk v. Greenpoint Mortgage Funding, Inc., *et al.*
United States District Court for the Eastern District of Pennsylvania

# Exhibit H

# NOTICE

So there is no confusion, this property is **137 N. 8th St** - Owner - Allen J. Folk. Any foreclosures, sheriff sales, or any other legal matters pertain to next door,

which is **137 ½** -owned by Raul C. Polanco.

# WARNING

Any persons entering this premises will be prosecuted by law for trespassing and illegal entry.

Questions- contact owner Allen J. Folk @ 610-589-1362 Or 610-451-9495

*I STEVEN FLOYD CAME to this APP. SAW Sign on the DOOR ON 137 N. 8th St*

*11/11/08 Steven Floyd AT 1100 AM.*